UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.

       Case No. 08-20103
       Hon. Victoria A. Roberts

GARY ABERNATHY,

       Defendant.
_____

**OPINION AND ORDER**

**I.    INTRODUCTION**

This matter is before the Court on the Government's Motion for Hearing On and Determination of Defendant's Mental Competency. The Court conducted a competency hearing on March 12, 2009. Regina McCullough appeared for the Government. Defendant was represented by Linda Ashford, special counsel for this Competency Hearing. William Daniel, standby counsel, was also present.

Dr. Jason Dana, Psy. D., Forensic Studies Unit, Metropolitan Correctional Center - Chicago ("MCC-Chicago"), and attorneys David Cripps, Margaret Raben and Richard Korn testified as witnesses for the Government. Dr. George R. Fleming, Ph.D. testified as a defense witness.

**II.    BACKGROUND**

Defendant is charged in a superceding indictment with Armed Bank Robbery, pursuant to 18 U.S.C. §§ 2113(A), (D) & 2, and Possession of a Firearm in Furtherance

1

of a Crime of Violence, pursuant to 18 U.S.C. §§ 924(c)(1)(A).

Defendant is 42 years old and resided with his mother until his arrest on these charges. Defendant has a G.E.D. and worked sporadically since his release from state prison in 2001. Defendant has been detained at the Wayne County Jail since September 2007.

The current charges stem from an incident that occurred on September 11, 2007 at the Comerica Bank in Sterling Heights, Michigan. Defendant and a co-defendant allegedly robbed the bank at gunpoint. Defendant gave different accounts of his involvement. He initially cooperated with the Government. Now, Defendant denies any involvement and ceased his cooperation.

Defendant has been embroiled in conflicts with his court-appointed attorneys. Four attorneys have withdrawn due to breakdowns in communication. Defendant now represents himself because he says his lawyers lied to him and were not acting in his best interests.

Defendant filed numerous letters, motions, lawsuits, complaints and appeals in which he contends that the Government, the Court, his lawyers and this Judge are engaged in a conspiracy to violate his rights and illegally incarcerate him. The Government moved the Court for an Order requiring Defendant to submit to a psychiatric or psychological evaluation.

On October 27 2008, this Court issued an Order [Doc. #81] requiring Defendant to submit to a psychiatric or psychological evaluation. Defendant was designated to MCC-Chicago. He met with Dr. Dana for clinical interviews on multiple occasions in November and December 2008. Dr. Dana did not conduct normal assessment tests

because Defendant refused to comply with requests to participate in psychological assessment procedures. Defendant also refused to provide any background information or consent to release medical records.

On January 13, 2009, Dr. Dana issued his Forensic Report. Government's Exhibit A. Dr. Dana based his opinion on clinical interviews and review of available court, FBI and prison records. Dr. Dana did not review any medical or mental health records, or obtain history from any family members.

Dr. Dana opined that "it is likely that his preoccupation with the perception of his being a victim of a conspiracy, and the subsequent anger he experiences will stand as a significant impediment to cooperative interactions with any attorney assigned to his case." However, Dr. Dana did not believe that Defendant's thoughts and feelings were a consequence of any severe mental illness. Based on his findings, Dr. Dana concluded that Defendant was competent to stand trial.

On February 27, 2009 and March 4, 2009, Defendant met with Dr. Fleming for an independent evaluation. Dr. Fleming reviewed FBI and court records, and the Wayne County Probate Court General Index. Pursuant to Defendant's consent, Dr. Fleming also reviewed Wayne County Jail Health Services Division, Mental Health Department psychiatric and nursing reports for several years. Dr. Fleming administered the following tests: (1) Clinical Interview; (2) the Neurobehavioral Cognitive Status Examination ("COGNISTAT"); (3) Trail Making Tests, Parts A and B; and (4) Evaluation of Competence to Stand Trial - Revised ("ECST-R").

Dr. Fleming issued his Psychological Evaluation report on March 10, 2009. Defendant's Exhibit A. He concluded that Defendant has a pervasive mental illness with

delusional ideation. Based on his findings, Dr. Fleming found that Defendant was incompetent to stand trial.

**III.   ANALYSIS**

After a competency hearing, the court must, based on a "preponderance of the evidence," make a determination as to the defendant's competency to stand trial. 18 U.S.C. §4241(d). The court's determination is reviewable on appeal by a "clearly erroneous" standard. *U.S. v. Ford,* 184 F.3d 566, 581 (6th Cir. 1999); *U.S. v. Cook*, 356 F.3d 913 (8th Cir. 2004).

To be competent, a defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States,* 362 U.S. 402, 402 (1960). "A criminal defendant may not be tried unless he is competent." *Godinez v. Moran*, 509 U.S. 389, 396 (1993).

Defendant does not meet the *Dusky* criteria. A review of the expert testimony reveals the following:

1. Dr. Dana relied on Defendant as a historian of information and did not independently obtain additional medical or mental health information.

2. Dr. Dana testified that Defendant presented as angry and upset about his experiences in the court system. Defendant focused on the conspiracy theory during interviews and expressed an unwillingness to engage in other types of psychological interviewing. Dr. Dana determined that Defendant possessed the capacity for cooperative interactions with a defense attorney, but it would be predicated on the attorney's willingness

4

        to pursue Defendant's legal approach and strategies.  Dr. Dana opined that Defendant was unwilling as opposed to unable to participate.

3.      Dr. Fleming obtained history from Defendant, but also independently obtained available forensic system information, such as probate court records and jail medical and mental health records.  Dr. Fleming also talked to Defendant's psychiatrist at the jail.  Dr. Fleming conducted a more exhaustive examination, albeit with Defendant's cooperation which was denied to Dr. Dana.

4.      Dr. Fleming testified that prior to his meetings with Defendant, he learned that Defendant voluntarily sought mental health treatment and was housed in the psychiatric unit at the Wayne County Jail.  Dr. Fleming also learned that Defendant was being treated for a mood disorder and taking the medication, Remeron.  Defendant told Dr. Fleming he was taking the medication for sleep disturbance.  Defendant's treatment was inconsistent since he voluntarily signed himself into and out of the psychiatric unit.

5.      Dr. Fleming testified regarding the results of Defendant's psychological testing.  On the Trail Making Test, Part A, Defendant tested within normal ranges.  On Part B, which tests cognitive ability and the ability to self regulate, Defendant demonstrated cognitive impairments in several key areas.

6.      On the COGNISTAT, which tests the coordination of issues and perception, Defendant produced (1) average range of functioning in the domains of Language, Calculations and Reasoning; (2) moderate

       cognitive deficit in the Construction domain (though handcuffs may have affected this score); and (3) moderate to severe deficit in the Memory domain.

7. On the ECST-R. Defendant scored very poorly on his rational ability to consult with counsel; his score of 90 corresponds with very extreme impairment. Defendant also showed severe impairment on his rational understanding of the proceedings, with a score of 74. Defendant scored 47 on his factual understanding of the proceedings; this corresponds with a normal finding. His overall rating was an extreme impairment.

8. Dr. Fleming said Defendant became very agitated because his mother became ill and subsequently died in mid-January 2009. In addition to the mood disorder, Dr. Fleming believed that Defendant's unresolved mourning produced degenerative associated effects of depression. These disorders, coupled with his delusional ideation regarding a court conspiracy, were producing a bi-polar phenomenon.

9. Dr. Fleming made a definitive diagnosis that Defendant suffered from Bi-Polar Disorder. Dr. Fleming also opined that Defendant was depressed due to his mother's passing. Based upon Defendant's mental illness and his inability to assist a defense attorney, Dr. Fleming concluded that Defendant was incompetent to stand trial.

10. Upon questioning by the Court, Dr. Dana admitted that he would have liked to conduct several psychological tests. The results of those tests would have aided him in making a more accurate and comprehensive

>  diagnosis. Dr. Dana also admitted that in conducting his own testing, if he had obtained the scores which Dr. Fleming obtained, he also likely would have concluded that Defendant was incompetent. Dr. Dana agreed that Defendant's condition could have deteriorated between the time period that he saw Defendant and when Dr. Fleming saw him due to continued levels of distress.

Attorneys Cripps, Korn, and Raben, acknowledging the existence of an attorney-client relationship with Defendant, offered limited testimony regarding their interactions with him. Each testified that they were unable to discuss the case with Defendant and opined that he was unable to assist them in his defense.

"The test for a defendant's competency to stand trial is whether he has sufficient present ability to consult with his lawyer with reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." *Mallet v. U.S.*, 334 F.3d 491, 494-495 (6th Cir. 2003) (quoting *Dusky*, 362 U.S. at 402). It is not enough that the defendant is oriented to time and place and has some recollection of events." *Dusky*, 362 U.S. at 402.

The Court finds that Defendant has a factual understanding of the proceedings against him. He was able to provide both doctors with an account of the events and he understood the roles of the various parties involved in a court proceeding. However, Defendant has substantial impairments in his present ability to consult with and assist any counsel with a reasonable degree of rational understanding; he also lacks a rational understanding of the proceedings. Psychological testing showed severe to very extreme impairments in both areas. Defendant's inability to consult with and assist at

least three attorneys, thus far, is further evidence of impairment.  So long as these impairments persist, Defendant will be unable to reasonably assist an attorney in his defense or to represent himself at trial.

 IV.   **CONCLUSION**

Based upon: (1) the opinion of Dr. George Fleming; (2) the testimony of Dr. Dana that he would have reached the same opinion reached by Dr. Fleming had he received the same test results; (3) the testimony of Defendant's former attorneys; and (4) the Court's own observations of Defendant, the Court determines that Defendant is **INCOMPETENT** to stand trial.

Pursuant to the Insanity Defense Reform Act of 1984, 18 U.S.C. §§ 4241-4247, the Court commits Defendant to the custody of the Attorney General for hospitalization and treatment at a suitable facility, for a period not to exceed four months, for the purpose of determining whether there is a substantial probability that in the foreseeable future Defendant will attain the capacity to permit the proceeding to go forward. 18 U.S.C. §4241(d)(1); 18 U.S.C. §4247(i)(A).

Within the four-month period of time, the Attorney General must advise the Court whether Defendant's mental condition has so improved that trial may proceed.  On receipt of that report, Defendant must be returned to the Court for a status conference and further determination as to Defendant's competency.

The Court orders that the United States Marshal's Service must promptly and expeditiously transfer Defendant to a suitable facility, to be determined by the Attorney General, and that the United States Marshal's Service must do this as quickly as

possible so as to minimize the period during which Defendant must travel to, be confined in, and be returned from the facility where such treatment will be conducted.

The time period associated with this process, from the filing date of the Order for Psychiatric or Psychological Examination [Doc. #81] through and including the date on which a final determination is made regarding whether Defendant has regained his competency to stand trial, is excluded under the Speedy Trial Act pursuant to the terms of 18 U.S.C. § 3161(h)(1)(A) and (h)(4).

**IT IS ORDERED.**

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  March 30, 2009

The undersigned certifies that a copy of this document was served on the attorneys of record and Gary Abernathy by electronic means or U.S. Mail on March 30, 2009.

s/Carol A. Pinegar
Deputy Clerk