UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

vs                                                      Case No: 08-20103
                                                            Honorable Victoria A. Roberts

**GARY ABERNATHY,**

    **Defendant.**

_____/

**OPINION AND ORDER**

**I.    INTRODUCTION**

This matter is before the Court for Sentencing. The Government filed its Sentencing Memorandum on July 9, 2010. Defendant, who represents himself, did not file a Sentencing Memorandum; his standby counsel, Sidney Kraizman, also declined to file a Sentencing Memorandum, due to Defendant's stated wishes.

The Court adjourned Defendant's originally scheduled Sentencing on July 30, 2010, due to errors in the PSIR. The PSIR was amended and copies were sent to the parties. Neither the Government, nor Defendant filed objections to the amended PSIR.

**II.    DEFENDANT'S VOLUNTARY ABSENCE**

On both Tuesday, August 24th, and Wednesday, August 25, 2010, Mr. Abernathy refused to leave his cell at Milan FCI to be transported to Detroit for sentencing. Mark Taylor, Correctional Systems Officer at Milan, wrote a Memorandum for Andy Cramer, Supervisory Correctional System Specialist and James Black, Acting Captain at Milan, outlining efforts undertaken on Tuesday, August 24th, to transport Mr.

1

Abernathy to Detroit. See Exhibit A. Mr. Taylor writes that Mr. Abernathy refused to pack out and go to Court, and said "He is the Supreme ruler of himself and nobody, Foreman, Shelton, the Judge or myself can Rule over myself and tell him what he has to do." Mr. Abernathy also said that if force was used to transport him, "do what you have to do and someone will get hurt."

After getting this report, the court asked standby counsel, Sidney Kraizman, to go to Milan on the afternoon of August 24th, and speak to Mr. Abernathy about his sentencing and urge him to come to Court. Mr. Abernathy refused to see or speak to Mr. Kraizman. A record was made of Mr. Kraizman's efforts to speak to Mr. Abernathy.

The Court also sent a letter to Mr. Abernathy, which was hand delivered to him on the morning of August 25th, when marshals again attempted to transport him to Detroit. The Court's letter, attached as Exhibit B, informed Mr. Abernathy that if he continued to refuse to come to Court for sentencing, the Court had the right under federal rules to declare that he had waived his right to be present at his sentencing, and that the Court could sentence him in his absence. At the hearing, USM Ken Foreman described his unsuccessful efforts to transport Mr. Abernathy on the morning of sentencing.   Additionally, Mark Taylor prepared Exhibit C, confirming the unsuccessful efforts to transport Mr. Abernathy on August 25th.

Under these circumstances, the court relies on FRCrP 43, and rules that Mr. Abernathy voluntarily waived his right to be present for sentencing:

Rule 43.      Defendant's Presence

    (c)      Waiving Continued Presence.

        (1)      In General.  A defendant who was initially present at trial, or

>who had pleaded guilty or nolo contendre, waives the right to be present under the following circumstances:
>
>(B) in a noncapital case, when the defendant is voluntarily absent during sentencing;

the Court proceeds to sentence Mr. Abernathy.

## III. BACKGROUND

Defendant, Gary Abernathy, was charged in a two-count First Superceding Indictment with Armed Bank Robbery, Aiding and Abetting, in violation of 18 U.S.C. § 2113(a), (d), & 2, and Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Defendant and co-defendant, Omar Mackie, were alleged to have used a firearm to rob a Comerica Bank in Sterling Heights, Michigan, netting proceeds of $31,856.00. On March 16, 2010, a jury convicted Defendant of both counts.

## IV. ADVISORY GUIDELINES

### A. Probation Department Calculations

Probation calculates an initial base offense level of 20 under § 2B3.1(a), with a two-point enhancement under §2B3.1(b)(1) because the victim was a financial institution, and a one-point enhancement under § 2B3.1(b)(7)(B) for a loss more than $10K, but less than $50K, for a total offense level of 23. With three criminal history points and a Criminal History Category II, Probation calculates a guideline range of 51 to 63 months on Count 1. Count 2 carries a statutory mandatory minimum sentence of 84 months. The Probation Department's new calculations are accurate.

### B. Court's Calculations

With a total offense level of 23, three criminal history points and a Criminal History Category II, Defendant's guideline range is 51 to 63 months on Count 1. Count 2 carries a statutory mandatory consecutive sentence of 7 years, pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). Thus, the combined guideline range is 135 to 147 months.

## V.   CASE LAW AND ANALYSIS

### A.   Case Law

The Court must be sure that the sentence imposed is "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Pre-*Booker*, the Sentencing Guidelines limited the type of factors a district court could consider in fashioning an appropriate sentence, and mandated the extent to which a factor had to be present to warrant a departure from the Guidelines range. *Booker,* 543 U.S. 220; *see United States v. Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998). *Booker*, however, rendered the Guidelines advisory. Now, sentencing courts must consider the applicable Guidelines range and the additional statutory concerns set forth in 18 U.S.C. § 3553(a). *Booker,* 543 U.S. at 245-246. These § 3553(a) statutory considerations include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> .     .     .
>
> (3) the kinds of sentences available;
> (4) the applicable advisory Guidelines range;
> (5) relevant policy statements by the Sentencing Commission;
> (6) the need to avoid unwarranted sentenc[ing] disparities; and
> (7) the need to provide restitution to . . . victims.

*United States v. Cousins*, 469 F.3d 572, 576 (6th Cir. 2006) (emphasis added) (quoting 18 U.S.C. § 3553(a)) (internal quotations omitted)).

4

After considering these factors, the Court must impose a sentence that takes into account the statutory purposes in § 3553(a)(2):

>   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>   (B) to afford adequate deterrence to criminal conduct;
>   (C) to protect the public from further crimes of the defendant; and
>   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . .

18 U.S.C. 3553(a)(2).

In the recent decision of *Gall v. United States*, the Supreme Court again clarified the appropriate approach to the review of district court sentences. *Gall v. United States*, 128 S. Ct. 586 (2007). District court sentences must be reasonable, and are subjected to "reasonableness' review" by the courts of appeals. *Id.* at 594. This review applies "the familiar abuse-of-discretion standard of review." *Id; see also United States v. Vonner*, 516 F.3d 382, 385-386 (6th Cir. 2008) (holding that district courts must ask whether the defendant has any objections to the sentence to ensure abuse-of discretion review).

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Id.* at 596-597 (citing *Rita v. United States*, 127 S. Ct. 2456, 2480 (2007)). "[T]he Guidelines should be the starting point and the initial benchmark." *Id.* at 596. "[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. *Id.* However, "[i]n so doing, he may not presume that the Guidelines range is reasonable." *Id.* "The Guidelines are not the only consideration . . . ." *Id.* (citing *Rita*,

5

127 S. Ct. at 2480). "He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* "[A] major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 128 S. Ct. at 596-597.

"When a defendant raises a particular argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Lalonde*, 509 F.3d 750, 770 (6th Cir. 2007) (quoting *United States v. Jones*, 489 F.3d 243, 252 (6th Cir. 2007)). In addition, after consideration of these arguments, "the district judge cannot simply rely upon the advisory Guidelines range, but rather 'must make an individualized assessment based on the facts presented.'" *Id.* (quoting *Gall*, 128 S. Ct. at 596-597).

### B. Section 3553(a) Factors

Defendant is a single, 44 year old man, with no minor children. Both of his parents are deceased. Two sisters and a brother reside in the Detroit area. Information about Defendant's family is limited due to his refusal to cooperate with the pre-sentence investigation.

Defendant obtained a GED and vocational training in custodial maintenance during a prior period of incarceration. Defendant maintained sporadic employment throughout his life, and last worked for a temporary agency in 2007.

Defendant has no known major health problems. He has a documented history of alcohol and substance abuse. Prior treatment efforts were unsuccessful.

Defendant also has a history of mental health problems and treatment; past diagnoses include mood disorder with delusional thinking and depression. This Court found Defendant incompetent to stand trial and ordered him to receive mental health treatment to restore his capacity. Defendant presented as uncooperative and combative during most of his court proceedings. He claims he is a Moorish American sovereign citizen of Moorish descent, residing in the United States.

The offense conduct is fully described in the PSIR. Defendant, along with co-defendant, Mackie, robbed a Comerica Bank branch in Sterling Heights, Michigan. Mackie, armed with a handgun, ordered employees to get down on the ground. Defendant, carrying a backpack, approached bank tellers demanding money. As witnesses testified at trial, Defendant terrorized the bank tellers, who feared they would be shot if they did not comply. He yelled at them, paced up and down the teller line demanding more money, and demanded to see the bank manager. After collecting money, Defendant and Mackie fled the scene. The robbery lasted three and a half minutes. Defendant and Mackie were later apprehended by Sterling Heights police officers, who recovered $31,856.00. A dye pack, valued at $560.00, was also destroyed; Defendant should pay restitution in that amount.

Defendant has a criminal history dating back to 1989, when he was age 22. This includes 1996 convictions for Assault with Intent to Rob While Armed and Felony Firearm, for which he was sentenced to 2 to 15 years; he robbed a cashier at gunpoint. Defendant's response to incarceration was poor. He received several misconducts for

7

substance abuse issues and escaped from a halfway house.  Defendant was paroled and returned to prison twice for violations.  He was discharged from parole in January 2003.  He committed this offense four years later, in September 2007.  Defendant also has six active outstanding warrants with the 36th District Court, for offenses from October 2007.

Defendant refused to cooperate during the pre-sentence investigation.  His sister, likewise, declined to provide any information to the probation department.  Defendant has not provided the Court with any information relating to his history or characteristics which would warrant a sentence below the applicable guideline range.

## VI.   CONCLUSION

In light of Defendant's repeated assaultive criminal activity, there is a strong need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to deter similar criminal conduct, and to protect the public from further crimes of the Defendant.  In light of his long history of alcohol and substance abuse, there is also a need for alcohol and substance abuse treatment.  A sentence of 51 months on Count 1, and consecutive sentence of 84 months on Count 2, for a total of 135 months, is sufficient, but not greater than necessary to accomplish those goals.

## VII.  RIGHT TO APPEAL

The Court notifies Mr. Abernathy that pursuant to Federal Rule of Appellate Procedure 4 (b)(1)(A), he may have certain appellate rights, with respect to conviction and sentencing, typically which must be exercised within 14 days after the later of:

(i)     the entry of either the judgment or the order being appealed; or

(ii) the filing of the government's notice of appeal.

The Court includes the following forms for Mr. Abernathy:

(1) Notice of Appeal;

(2) Application for Appointment of Counsel Financial Affidavit; and.

(3) Application to Proceed In Forma Pauperis.

**IT IS ORDERED.**

        /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 26, 2010

The undersigned certifies that a copy of this document was served on the attorneys of record and Gary Abernathy by electronic means or U.S. Mail on August 26, 2010.

s/Linda Vertriest
Deputy Clerk